IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| PAULINE JOHNSON; NORMA SHIRLEY SPENCER; and RICHARD L. FURMANSKI, | ] ] ] | |
| Plaintiffs, | ] ] ] | |
| -vs- | ] ] | Civil No. |
| PFIZER, INC.; PHARMACIA CORPORATION; and G.D. SEARLE LLC (FKA G.D. SEARLE & CO.), | ] ] ] ] | **JURY TRIAL DEMANDED** |
| Defendants. | ] ] ] | |

## COMPLAINT

Mark B. Hutton
KS Bar #10112
Elizabeth L. Dudley
KS Bar #21582
HUTTON & HUTTON LAW FIRM, L.L.C.
8100 East 22nd Street North, Bldg. 1200
P.O. Box 638
Wichita, Kansas 67201-0638
Telephone: (316) 688-1166
Facsimile: (316) 686-1077
Trial.Lawyers@huttonlaw.com

*Attorneys for Plaintiffs*

Martha K. Wivell, Esq
MN Bar #128090
Attorney at Law
Box 339
Cook, MN 55723
Telephone: (218) 666-0250
MWivell@MSN.com

*Attorneys for Plaintiffs and Local Counsel*

Dated: June 5, 2007

### Table of Contents

I.     Introduction ................................................................................................    3

II.    THE PARTIES. ..........................................................................................    4

       A.     The Individual Plaintiffs ...............................................................    4
       B.     The Defendants PFIZER, INC.;
              PHARMACIA CORPORATION; and
              G.D. SEARLE LLC (FKA G.D. SEARLE & CO.) ......................    4

III.   JURISDICTION AND VENUE ...................................................................    6

IV.    FACTS COMMON TO ALL PARTIES .......................................................    7

V.     INDIVIDUAL PLAINTIFF'S STATEMENT OF FACTS .............................   10

       A.     PAULINE JOHNSON ....................................................................   10
       B.     NORMA SHIRLEY SPENCER .......................................................   11
       C.     RICHARD L. FURMANSKI ............................................................   12

VI.    CLAIMS FOR RELIEF ................................................................................   13

       A.     Count I:  Strict Liability .................................................................   13
       B.     Count II:  Breach of Implied Warranty of Merchantability ...............   14
       C.     Count III:  Breach of Implied Warranty of Fitness of a
              Particular Purpose ........................................................................   15
       D.     Count IV:  Breach of Express Warranty ..........................................   16
       E.     Count V:  Negligence .....................................................................   18

VII.   DEMAND FOR JUDGMENT AGAINST DEFENDANT
       PFIZER, INC.; PHARMACIA CORPORATION; and
       G.D. SEARLE LLC (FKA G.D. SEARLE & CO.) ...................................   20

VIII.  DEMAND FOR JURY TRIAL ......................................................................   21

## COMPLAINT

Plaintiffs, for their Complaint against Defendants, allege as follows:

## I.    INTRODUCTION.

1.    This is a civil action seeking damages for personal injuries. The Plaintiffs assert product liability claims against Defendants PFIZER, INC., PHARMACIA CORPORATION; and G.D. SEARLE LLC (FKA G.D. SEARLE & CO.) (hereinafter referred to as "PFIZER") arising from the design, manufacture, and sale of a drug known as Bextra ("BEXTRA"). It is alleged by the Plaintiffs that BEXTRA was a defective and unreasonably dangerous product that caused their damages.

2.    It is anticipated that these actions will be subject to transfer and consolidation for pretrial proceedings pursuant to 28 U.S.C.A. §1407 in the United States District Court for the District of Minnesota. *See In Re: Bextra and Celebrex Product Liability Litigation,* MDL 1699 (J.P.M.D.L., *filed* Sept. 6, 2005) (transfer order, attached as Exhibit "A"). Plaintiffs join their individual and several claims against Defendants into this one lawsuit because their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and questions of law and fact common to all Plaintiffs will arise in this action. FED. R. CIV. P. 20(a). Joinder of these parties and claims for transfer and pretrial proceedings would work to "secure the just, speedy, and inexpensive determination of [this] action." FED. R. CIV. P. 1. Therefore, Plaintiffs have joined their claims in this Complaint.

## II.    THE PARTIES.

### A.    The Individual Plaintiffs.

3.    Plaintiff, **PAULINE JOHNSON**, is an adult individual residing in North Carolina.

4.    Plaintiff, **NORMA SHIRLEY SPENCER**, is an adult individual residing in Mississippi.

5.    Plaintiff, **RICHARD L. FURMANSKI**, is an adult individual residing in Nebraska.

### B.    The Defendants PFIZER, INC.; PHARMACIA CORPORATION; and G.D. SEARLE LLC (FKA G.D. SEARLE & CO.).

6.    Defendant **PFIZER, INC**., is a foreign, for-profit corporation.  PFIZER is incorporated in Delaware and has its principal place of business in New York, New York. At all times material, PFIZER was and is in good standing and actively doing business in the State of Minnesota.  On July 16, 2002, PFIZER announced its proposed acquisition of PHARMACIA CORPORATION ("PHARMACIA").    On April 16, 2003, PFIZER completed its $60 billion acquisition of PHARMACIA.  As a wholly-owned subsidiary of PFIZER, PHARMACIA acted in all aspects as PFIZER's agent and alter ego.   At all relevant times, PFIZER and/or its predecessors in interest were engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, and selling the drug Valdecoxib, under the trade name BEXTRA in Minnesota and throughout the United States.

7.    Defendant **G.D. SEARLE LLC (FKA G.D. SEARLE & CO.)** ("SEARLE"), is a Delaware corporation with its principal place of business in Illinois.  In April 2000 SEARLE was acquired by PHARMACIA, and became a wholly-owned

4

subsidiary of PHARMACIA. At the time of PFIZER's acquisition of PHARMACIA, SEARLE was a wholly-owned subsidiary of PHARMACIA, acting as its agent and alter ego in all matters alleged in this Complaint, and is now a wholly-owned subsidiary of PFIZER. At all relevant times, SEARLE has been engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, and selling the drug Valdecoxib, under the trade name BEXTRA in Minnesota and throughout the United States.

8.     Defendant **PHARMACIA CORPORATION** is a Delaware corporation with its principal place of business in New Jersey. PHARMACIA was created in April 2000 through the merger of Pharmacia & Upjohn with Monsanto Company and its G.D. SEARLE unit. PHARMACIA is now a wholly-owned subsidiary of PFIZER. At all relevant times, PHARMACIA, and its predecessors in interest have been engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, and selling the drug Valdecoxib, under the trade name BEXTRA in Minnesota and throughout the United States.

9.     Valdecoxib was developed in 1998 by SEARLE and marketed jointly by SEARLE and PFIZER under the brand name BEXTRA. SEARLE was acquired by PHARMACIA, which was then acquired by PFIZER, in part so that PFIZER could take full control of BEXTRA.

10.     At all times relevant to this action, Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted, and misrepresented the risks, dangers, defects, and disadvantages of BEXTRA, and advertised, promoted, marketed, sold and distributed BEXTRA as a safe prescription medication when, in fact, Defendants had

reason to know, and did know, that BEXTRA was not safe for its intended purposes, for the patients for whom it was prescribed, and for whom it was sold; and that BEXTRA caused serious medical problems, and in certain patients, catastrophic injuries and deaths.

11.    In engaging in the conduct alleged herein, each Defendant acted as the agent for each of the other Defendants, or those Defendant's predecessors in interest.

## III.    JURISDICTION AND VENUE.

12.    This Court has subject matter jurisdiction under 28 U.S.C.A. §1332 (diversity jurisdiction).   Plaintiffs and PFIZER are citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

13.    This Court has personal jurisdiction over PFIZER who, at all times material, was and is licensed and registered to do business in Minnesota.   PFIZER maintains a registered agent for the service of process in Minnesota:  CT Corporation System, Inc., 405 2nd Avenue South, Minneapolis, MN 55401.  Plaintiffs, by bringing this action, submit to this Court's personal jurisdiction.

14.    As this is a case is based upon diversity jurisdiction, this Court applies the forum state's choice-of-law rules.  *Glover v. Merck & Co., Inc.*, 345 F.Supp.2d 994, 997 (D. Minn. 2004).  Therefore, Minnesota choice-of-law principles apply here. *Id*

15.    As it relates to statutes of limitation, the traditional rule in Minnesota is that such statutes are procedural and governed by the law of the forum. *Id*

16.    Venue is proper in this District pursuant to 28 U.S.C.A. §1391.  PFIZER marketed, advertised and distributed the dangerous product in this district, thereby receiving substantial financial benefit and profits from sales of the dangerous product in

this district, and reside in this district under 28 U.S.C.A. §1391(c), such that venue is proper.

17.     At all relevant times herein, PFIZER was in the business of designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing, warranting and selling their product, BEXTRA. PFIZER at all times relevant hereto designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold in interstate commerce (including Minnesota) the aforementioned prescription drug. PFIZER does substantial business in the State of Minnesota and within this District, advertises in this district, receives substantial compensation and profits from sales of BEXTRA in this District, and made material omissions and misrepresentations and breaches of warranties in this District so as to subject them to *in personam* jurisdiction in this District. In engaging in the conduct herein, each Defendant acted as the agent for each of the other Defendants or those Defendants' predecessors in interest.

## IV.     FACTS COMMON TO ALL PLAINTIFFS.

18.     There are a group of medications or drugs known as "non-steroidal anti-inflammatory drugs" or "NSAIDs." These *medications* are designed to relieve pain, inflammation, and swelling. Common NSAIDs include aspirin and ibuprofen. While aspirin and ibuprofen are effective NSAIDs, they do cause some people to experience gastrointestinal complications.

19.     In the last ten to fifteen years, a new generation of NSAIDs known as "COX-2 inhibitors" have been introduced to provide relief from pain, inflammation, and swelling without gastrointestinal complications. A COX-2 inhibitor minimizes the

effects of the COX-2 enzyme, while not interfering with the COX-1 enzyme which helps to protect the stomach's lining, gastrointestinal tract, and kidney functions.

20.    In 1999, a drug known as "Celebrex," that was originally developed by G.D. SEARLE, was approved by the U.S. Food and Drug Administration ("FDA") as the first COX-2 inhibitor.    Shortly thereafter, PHARMACIA acquired G.D. SEARLE through its merger with the Monsanto Company.

21.    By the end of 2000, PHARMACIA had submitted "parecoxib sodium," another COX-2 inhibitor, for FDA approval for acute pain management.    Parecoxib sodium is a "pro-drug" for "valdecoxib."  A pro-drug is a drug which is rapidly converted in the body to the active form, which, in the case of parecoxib sodium, is valdecoxib. During studies, parecoxib sodium was associated with a cluster of cardiovascular events and was rejected by the FDA in 2001.

22.    Thereafter, PHARMACIA submitted another COX-2 inhibitor, named "BEXTRA," which was Valdecoxib, to the FDA for approval.

23.    The testing data provided by PHARMACIA was inadequate to disclose the dangerous properties of BEXTRA.  If PHARMACIA had conducted adequate testing prior to FDA approval, rather than the short-duration studies on small patient groups, PHARMACIA's data would have revealed significant increases in incidence of strokes and myocardial infarctions among the intended and targeted population of BEXTRA consumers.  Adequate testing would have shown that BEXTRA possessed serious side effects for individuals such as the Plaintiffs.  PFIZER, and its predecessors, should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings

8

accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

24.    PFIZER, and its predecessors, intentionally withheld information, suppressed data, and limited studies to conceal the hazardous nature of COX-2 inhibitors and BEXTRA to obtain FDA approval and market their product to the public. PFIZER and its predecessors knew, from their experience with parecoxib sodium, the pre-drug to Valdecoxib or BEXTRA, that substantial evidence of adverse cardiovascular events would complicate or bar FDA approval. Therefore, PFIZER and its predecessors intentionally manipulated the testing and data to conceal these adverse events associated with Valdecoxib or BEXTRA.

25.    The FDA approved BEXTRA to treat the joint pain of osteoarthritis and adult rheumatoid arthritis on November 16, 2001. Since its introduction to the market, BEXTRA has been prescribed for people suffering from osteoarthritis, adult rheumatoid arthritis, and menstrual cramping.

26.    PFIZER acquired PHARMACIA on April 16, 2003 and is the successor in interest to PHARMACIA and G.D. SEARLE.

27.    The use of BEXTRA grew rapidly, with sales exceeding $900,000,000.00 in 2003.

28.    Later in November, 2004, PFIZER added a new warning to the BEXTRA label cautioning doctors that BEXTRA was associated with increased risk of thromboembolic events such as attack, stroke, pulmonary embolism or deep vein thrombosis immediately following cardiac artery bypass graph ("CABG") surgery. The warning stated:

Patients treated with BEXTRA for pain following coronary artery
bypass graft surgery have a higher risk for
cardiovascular/thromboembolic events, deep surgical infections or
sternal wound complications. BEXTRA is therefore contraindicated for
the treatment of postoperative pain following CABG surgery.

BEXTRA is contraindicated for the treatment of post-operative pain
immediately following coronary artery bypass graft surgery and should
not be used in this setting.

29.     PFIZER limited the warning to patients who underwent coronary artery

bypass grafting surgery. There was no warning associated with the use of BEXTRA for

the treatment of osteoarthritis, adult rheumatoid arthritis, and menstrual cramping.

30.     On April 7, 2005, the FDA finally insisted that PFIZER "voluntarily

withdraw" BEXTRA from the U.S. market, stating:

[T]he overall risk versus benefit profile of BEXTRA is unfavorable.
This conclusion is based on the potential increased risk for serious
cardiovascular (CV) adverse events, which appears to be a class effect of
non-steroidal anti-inflammatory drugs (NSAIDs) (excluding aspirin), an
increased risk of serious skin reactions (e.g. toxic epidermal necrolysis,
Stevens-Johnson syndrome, erythema multiforme) compared to other
NSAIDs, and the fact that BEXTRA has not been shown to offer any
unique advantage over the other available NSAIDs.

FDA ALERT FOR HEALTHCARE PROFESSIONALS (April 7, 2005).

## V.     INDIVIDUAL PLAINTIFFS' STATEMENT OF FACTS.

## A.     PLAINTIFF PAULINE JOHNSON:

31.     Plaintiff **PAULINE JOHNSON** was prescribed BEXTRA on January 14,

2003. She took it daily and was still taking it on June 21, 2004, approximately two and

one-half years, at which time she was admitted to the hospital. Ms. Johnson was

diagnosed with a myocardial infarction (heart attack). BEXTRA caused or contributed to

cause Plaintiff's heart attack which she was diagnosed as having on June 21, 2004, along

with the resulting other injuries and damages.

32.    Ms. Johnson and her healthcare providers were at the time of her injuries unaware and could not have reasonably known or have learned through reasonable diligence that such injuries directly resulted from Plaintiff's ingestion of BEXTRA. Plaintiff and her healthcare providers never knew of the significant increased risks of heart attacks or strokes caused by BEXTRA until various information was released sometime thereafter.

33.    As a result of PFIZER's wrongful acts, Ms. Johnson suffered severe and permanent personal injuries as described above, as a result of her prescribed consumption of BEXTRA. As a result of the severe and permanent personal injuries as described above, Ms. Johnson incurred and will continue to incur damages, including but not limited to, medical expenses and other economic losses. Additionally, Ms. Johnson has endured and will continue to endure pain, suffering, disability, mental anguish, and disfigurement, causing additional damages. These damages exceed $75,000.00.

**B.    PLAINTIFF NORMA SHIRLEY SPENCER:**

34.    Plaintiff **NORMA SHIRLEY SPENCER** was prescribed BEXTRA on April 15, 2002. She took it daily and was still taking it on September 24, 2003, approximately seventeen months, at which time she was admitted to the hospital for a pre-op evaluation for surgery on her right knee when she was diagnosed with a deep vein thrombosis (DVT) in her right lower extremity. Ms. Spencer continued taking BEXTRA from September 24, 2003, and was still taking it on May 27, 2005, approximately twenty months, at which time she was again admitted to the hospital and diagnosed with a left posterior cerebral artery infarction (stroke). BEXTRA caused or contributed to cause Plaintiff's DVT and her stroke which she was diagnosed as having on September 24,

2003 and May 27, 2005, respectively, along with the resulting other injuries and damages.

35.     Ms. Spencer and her healthcare providers were at the time of her injuries unaware and could not have reasonably known or have learned through reasonable diligence that such injuries directly resulted from Plaintiff's ingestion of BEXTRA. Plaintiff and her healthcare providers never knew of the significant increased risks of heart attacks or strokes caused by BEXTRA until various information was released sometime thereafter.

36.     As a result of PFIZER's wrongful acts, Ms. Spencer suffered severe and permanent personal injuries as described above, as a result of her prescribed consumption of BEXTRA.  As a result of the severe and permanent personal injuries as described above, Ms. Spencer incurred and will continue to incur damages, including but not limited to, medical expenses and other economic losses.  Additionally, Ms. Spencer has endured and will continue to endure pain, suffering, disability, mental anguish, and disfigurement, causing additional damages.  These damages exceed $75,000.00.

## C.     PLAINTIFF RICHARD L. FURMANSKI:

37.     Plaintiff **RICHARD L. FURMANSKI** was prescribed BEXTRA on January 17, 2003.  He took it daily and was still taking it on September 30, 2003, approximately eight months, at which time he was admitted to the hospital for an acute cerebrovascular accident, left occipital infarct with the right hemianopsia (stroke). BEXTRA caused or contributed to cause Plaintiff's stroke along with the resulting other injuries and damages.

12

38.     Mr Furmanski and his healthcare providers were at the time of his injuries unaware and could not have reasonably known or have learned through reasonable diligence that such injuries directly resulted from Plaintiff's ingestion of BEXTRA. In fact, Plaintiff's health care providers continued to prescribe Bextra until August of 2004. Plaintiff and his healthcare providers never knew of the significant increased risks of heart attacks or strokes caused by BEXTRA until various information was released sometime thereafter.

39.     As a result of PFIZER's wrongful acts, Mr. Furmanski suffered severe and permanent personal injuries as described above, as a result of his prescribed consumption of BEXTRA. As a result of the severe and permanent personal injuries as described above, Mr. Furmanski incurred and will continue to incur damages, including but not limited to, medical expenses and other economic losses. Additionally, Mr. Furmanski has endured and will continue to endure pain, suffering, disability, mental anguish and disfigurement causing additional damages. These damages exceed $75,000.00.

## VI.    CLAIMS FOR RELIEF.

### A.     Count I:  Strict Liability.

40.     Plaintiffs adopt by reference Paragraphs 1 through 39.

41.     PFIZER and its predecessors in interest were engaged in the business of researching, designing, producing, manufacturing, testing, inspecting, packaging, advertising, promoting, selling, and distributing drugs and pharmaceutical products, particularly including BEXTRA as described above.

42.     BEXTRA was and is defective and unreasonably dangerous to persons, like Plaintiffs herein, who might be expected to use the products. BEXTRA was in a

defective condition because it was unsafe for normal or anticipated handling and consumption. BEXTRA was unreasonably dangerous as the product was dangerous to an extent beyond that which would be contemplated by the ordinary consumer, like Plaintiffs herein, who purchased it and used it, with the ordinary knowledge common to the community as to its characteristics. BEXTRA was also unreasonably dangerous because the drug, due to its dangerous condition, would not be put on the market by a reasonably prudent manufacturer or seller assuming they knew of its dangerous condition. BEXTRA was defective and unreasonably dangerous in design, manufacturing, instructions, and warnings.

43. BEXTRA was defective and unreasonably dangerous at the time the product left PFIZER's control.

44. BEXTRA was expected to reach and did reach Plaintiffs without substantial change in the condition in which the products were manufactured and sold.

45. The defects in BEXTRA and PFIZER's other wrongful acts caused or contributed to cause Plaintiffs' injuries and damages as set forth above.

46. WHEREFORE, Plaintiffs individually demand and pray for judgment against PFIZER, in an amount exceeding $75,000.00 with such other and further relief as the Court may deem just and equitable.

**B.    Count II: Breach of Implied Warranty of Merchantability.**

47. Plaintiffs adopt by reference Paragraphs 1 through 46.

48. PFIZER and its predecessors are merchants as to its drugs and pharmaceutical products, particularly including BEXTRA described above. BEXTRA and other drugs and pharmaceutical products are goods.

14

49.    PFIZER as a merchant impliedly warranted the merchantability of its drugs and pharmaceutical products, including BEXTRA.

50.    BEXTRA was not merchantable as impliedly warranted. Specifically, but not exclusively, BEXTRA was not fit for the ordinary purposes for which it was used because: (1) it caused increased risk of serious cardiovascular and cerebrovascular adverse events, including heart attacks, strokes, and other serious and harmful adverse health effects, and (2) was not effective in decreasing gastrointestinal side effects.

51.    Plaintiffs, as consumers of BEXTRA, were reasonably expected to use, consume and/or be affected by BEXTRA.

52.    PFIZER's breach of warranty and other wrongful acts caused or contributed to cause Plaintiffs' injuries and damages as set forth above.

53.    WHEREFORE, Plaintiffs individually demand and pray for judgment against PFIZER, in an amount exceeding $75,000.00 with such other and further relief as the Court may deem just and equitable.

**C.    Count III:  Breach of Implied Warranty of Fitness for a Particular Purpose.**

54.    Plaintiffs adopt by reference Paragraphs 1 through 53.

55.    PFIZER and its predecessors, as merchants and sellers of drugs and pharmaceutical products, including BEXTRA as described above, knew or had reason to know of the particular purpose for which its goods were used.

56.    The buyer of BEXTRA relied upon PFIZER's skill and judgment to select and furnish suitable products and goods.

57.    As a result, an implied warranty of fitness for a particular purpose existed as to BEXTRA.

15

58.    BEXTRA was not fit for its particular purpose because: (1) it caused increased risk of serious cardiovascular and cerebrovascular adverse events, including heart attacks, strokes, and other serious and harmful adverse health effects, and (2) was not effective in decreasing gastrointestinal side effects.

59.    BEXTRA was not fit for its particular purpose as impliedly warranted causing PFIZER to breach its implied warranty.

60.    Plaintiffs, as consumers of BEXTRA, were reasonably expected to use, consume and/or be affected by BEXTRA.

61.    PFIZER's breach of warranty and other wrongful acts caused or contributed to cause Plaintiffs' injuries and damages as set forth above.

62.    WHEREFORE, Plaintiffs individually demand and pray for judgment against PFIZER, in an amount exceeding $75,000.00 with such other and further relief as the Court may deem just and equitable.

**D.    Count IV:  Breach of Express Warranty.**

63.    Plaintiffs adopt by reference Paragraphs 1 through 62.

64.    PFIZER expressly represented to Plaintiffs and other consumers and the medical community that BEXTRA was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, particularly any unwarned-of side effects, and that it was adequately tested.

1)    These warranties came in the form of:

a.    PFIZER's public written and verbal assurances of the safety and efficacy of BEXTRA;

16

b.      Press releases, interviews and dissemination via the media of promotional information, the sole purpose of which was to create an increased demand for BEXTRA, which failed to warn of the risk of injuries inherent to the ingestion of BEXTRA, especially to the long-term ingestion of BEXTRA;

c.      Verbal and written assurances made by PFIZER regarding BEXTRA and downplaying the risk of injuries associated with the drug;

d.      False and misleading written information, supplied by PFIZER, and published in the Physician's Desk Reference on an annual basis, upon which physicians relied in prescribing BEXTRA during the period of Decedent's ingestion of BEXTRA, and;

e.      advertisements.

2)      The documents referred to above were created by and at the direction of PFIZER.

3)      PFIZER knew or had reason to know that BEXTRA did not conform to these express representations in that BEXTRA is neither as safe nor as effective as represented, and that BEXTRA produces serious adverse side effects.

4)      BEXTRA did not and does not conform to PFIZER's express representations because it is not safe, has numerous and serious side effects, including unwarned-of side effects, and causes severe and permanent injuries.

5)      Plaintiffs, other consumers, and the medical community relied upon PFIZER's express warranties.

6)      PFIZER's breach of express warranty and other wrongful acts caused or contributed to cause Plaintiffs' injuries and damages as set forth above.

65.     WHEREFORE, Plaintiffs individually demand and pray for judgment against PFIZER, in an amount exceeding $75,000.00 with such other and further relief as the Court may deem just and equitable.

**E.      Count V: Negligence.**

66.     Plaintiffs adopt by reference Paragraphs 1 through 65.

67.     PFIZER and its predecessors were negligent in preparing, designing, researching, developing, producing, manufacturing, testing, inspecting, packaging, advertising, promoting, selling, and/or distributing BEXTRA.  PFIZER's negligence included, but is not limited to, the following:

a.      PFIZER negligently failed to provide any or adequate and proper warnings as to the dangers of the use of BEXTRA for persons who were reasonably and foreseeably expected to use BEXTRA, such as Plaintiffs named herein;

b.      PFIZER negligently failed to warn and failed to provide adequate instructions for the use of BEXTRA for persons who were reasonably and foreseeably expected to use BEXTRA, such as Plaintiffs herein;

c.      PFIZER negligently failed to investigate, perform adequate research and/or test for the hazards of BEXTRA;

d.      To the extent that PFIZER may have inquired as to the hazards of BEXTRA, PFIZER negligently failed to convey whatever

18

knowledge or dangers, health hazards, or safety precautions it may have had to the prescribers, users and consumers of BEXTRA;

e.     PFIZER negligently failed to include adequate warnings with the drug that would alert the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, to the potential risks and serious side effects of the drug;

f.     PFIZER negligently failed to adequately and properly test and inspect the drug before placing the drug on the market;

g.     PFIZER negligently failed to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including but not limited to, an increased risk of adverse cardiovascular events and/or death;

h.     PFIZER negligently failed to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, of the potential risks and other serious side effects associated with the drug, including but not limited to an increased risk of serious thromboembolic and cardiovascular events and/or death;

i.     PFIZER negligently failed to conduct adequate pre-clinical testing and research to determine the safety of BEXTRA;

j.     PFIZER failed to conduct adequate post-marketing surveillance and exposure studies to determine the safety of BEXTRA;

19

k.      PFIZER  negligently  failed  to  provide  adequate post-marketing warnings or instructions after PFIZER knew, or should have known, of the significant risks associated with the use of the drug;

l.      PFIZER negligently failed to recall and/or remove the drug from the stream of commerce despite the fact that PFIZER knew, or should have known, of the defective and unreasonably dangerous nature of the drug, including the significant health risks associated with the use of the drug; and

m.      PFIZER negligently encouraged the misuse and overuse of BEXTRA while failing to disclose the side effects of the drug to the medical, pharmaceutical and/or scientific communities, and users and/or consumers, including Plaintiffs, in order to make a profit from sales.

68.    PFIZER's negligence and other wrongful acts caused or contributed to cause Plaintiffs' injuries and damages as set forth above.

69.    WHEREFORE, Plaintiffs individually demand and pray for judgment against PFIZER, in an amount exceeding $75,000.00 with such other and further relief as the Court may deem just and equitable.

## VII.    DEMAND FOR JUDGMENT AGAINST DEFENDANTS PFIZER, INC.; PHARMACIA CORPORATION; and G.D. SEARLE LLC (FKA G.D. SEARLE & CO.).

WHEREFORE, Plaintiffs, Pauline Johnson; Norma Shirley Spencer; and Richard L. Furmanski, individually demand judgment of and from PFIZER in an amount in excess of $75,000.00, individually, and seek compensatory damages together with

interest, cost of suit and attorney fees and for such other and further relief as the Court

deems just and equitable.

VIII.    **DEMAND FOR JURY TRIAL.**

      Plaintiffs demand a trial by jury on all claims so triable in this action.

                                     Respectfully submitted,

Dated:  June 5, 2007

                                     Martha K. Wivell, Esq.
                                     MN Bar #128090
                                     Attorney at Law
                                     Box 339
                                     Cook, MN 55723
                                     Telephone: (218) 666-0250
                                     MWivell@MSN.com
                                     *Attorney for Plaintiffs and Local Counsel*

                                     Mark B. Hutton
                                     KS Bar #10112
                                     Trial.Lawyers@huttonlaw.com
                                     Elizabeth L. Dudley
                                     KS Bar #21582
                                     Liz.Dudley@huttonlaw.com
                                     HUTTON & HUTTON LAW FIRM, L.L.C.
                                     8100 East 22nd Street North, Bldg. 1200
                                     P.O. Box 638
                                     Wichita, Kansas 67201-0638
                                     Telephone: (316) 688-1166
                                     Facsimile: (316) 686-1077
                                     www.huttonlaw.com
                                     *Attorneys for Plaintiffs*

21

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**MDL 1699**

SEP - 6 2005

FILED
CLERK'S OFFICE



## *RELEASED FOR PUBLICATION*

## *DOCKET NOS. 1691, 1693, 1694 & 1699*

## *BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

## *IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION*

## *IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION*

## *IN RE CELEBREX MARKETING AND SALES PRACTICES LITIGATION*

## *IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION*

### *BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ,\* ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL*

### *TRANSFER ORDER*

Before the Panel are five motions, pursuant to 28 U.S.C. § 1407, in these four dockets[1] that taken together seek centralization for coordinated or consolidated pretrial proceedings of all, or a subset of, these 31 actions,[2] in various federal districts. The moving MDL-1691 Louisiana plaintiffs seek centralization of the Bextra and Celebrex products liability actions in the Eastern District of Louisiana, while the moving Connecticut plaintiffs seek centralization of these actions in the District of Connecticut. The moving Southern New York MDL-1693 plaintiff seeks centralization of all Bextra and Celebrex actions in the Southern District of New York. The moving MDL-1694 plaintiffs seek separate centralization of the Bextra actions and the Celebrex actions in the District of Massachusetts before different judges. The moving MDL-1699 Louisiana plaintiffs seek centralization of all Bextra and Celebrex actions in the Eastern District of Louisiana. Most responding plaintiffs agree that centralization is appropriate, although some plaintiffs suggest alternative transferee districts, including the Northern District of California, the District of Delaware, the Southern District of Florida, the District of New Jersey, and the Southern District

---

\* Judge Motz took no part in the decision of this matter.

[1] At the hearing session in these four dockets, the Panel heard combined oral argument. Accordingly, the overlapping issues raised in these dockets are addressed in this one order.

The Panel has been notified of more than 100 potentially related actions pending in multiple federal districts. In light of the Panel's disposition of these dockets, the additional actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

[2] One additional action, *James Booker v. Merck & Co., Inc., et al.*, N.D. Texas, C.A. No. 3:05-496, was included on the MDL-1691 and MDL-1699 motions. The Panel's decision regarding inclusion of this action in multidistrict proceedings will be addressed in a separate order.

PLAINTIFF'S EXHIBIT A

**OFFICIAL FILE COPY**

of Texas. Defendant Pfizer Inc. (Pfizer) opposes centralization of the products liability actions, but supports centralization of the marketing/sales practices actions. Pfizer suggests coordination of this latter group of actions (and of the products liability actions, if the Panel deems centralization of these actions to be appropriate) with MDL-1688–*In re Pfizer Inc. Securities, Derivative and "ERISA" Litigation* in the Southern District of New York.

On the basis of the papers filed and hearing session held, the Panel finds that the actions in these four multidistrict dockets involve common questions of fact, and that Section 1407 centralization of all actions as one multidistrict docket (MDL-1699) in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions focus on i) alleged increased health risks from taking Celebrex and/or Bextra, anti-inflammatory prescription medications, and ii) whether Pfizer, as the manufacturer of both medications, knew of these increased risks and failed to disclose them to the medical community and consumers and/or improperly marketed these medications to both of these groups. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary. Resolution of overlapping issues, concerning these similar prescription medications manufactured by the same company, will be streamlined. *See In re Managed Care Litigation*, 2000 U.S. Dist. LEXIS 15927 (J.P.M.L. Oct. 23, 2000).

Opponents of Section 1407 centralization of all actions in one multidistrict docket argue that the presence of unique questions of fact relating to each drug (Bextra and Celebrex) or to the type of claims asserted (products liability and marketing/sales practices) should produce a different result. These parties urge us, instead, to separately centralize these actions. We are unpersuaded by these arguments. Transfer under Section 1407 has the salutary effect of placing all actions before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. The transferee court can employ any number of pretrial techniques – such as establishing separate discovery and/or motion tracks – to efficiently manage this litigation. In any event, we leave the extent and manner of coordination or consolidation of these actions to the discretion of the transferee court. *In re Mutual Funds Investment Litigation*, 310 F.Supp.2d 1359 (J.P.M.L. 2004). We are confident in the transferee judge's ability to streamline pretrial proceedings in these actions, while concomitantly directing the appropriate resolution of all claims.

Given the geographic dispersal of constituent actions and potential tag-along actions, no district stands out as the geographic focal point for this nationwide docket. Thus we have searched for a transferee judge with the time and experience to steer this complex litigation on a prudent course. By centralizing this litigation in the Northern District of California before Judge Charles R. Breyer, we are assigning this litigation to a jurist experienced in complex multidistrict litigation and sitting in a district with the capacity to handle this litigation.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the attached Schedule A and pending outside the Northern District of California are transferred to the

- 3 -

Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for coordinated or consolidated pretrial proceedings with the action pending there and listed on Schedule A.

IT IS FURTHER ORDERED that the actions in MDL-1691, MDL-1693 and MDL-1694 are merged into MDL-1699–*In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation.*

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

## SCHEDULE A

<u>MDL-1699 -- In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation</u>

### Northern District of Alabama

*Darryl Blue, etc. v. Pfizer, Inc.*, C.A. No. 2:05-464
*Martha Ann Lemond, et al. v. Merck & Co., Inc., et al.*, C.A. No. 7:05-691

### District of Arizona

*Dorothy Greaves v. Pfizer, Inc., et al.*, C.A. No. 2:05-647

### Central District of California

*John Bolwell, et al. v. Pfizer, Inc.*, C.A. No. 2:05-1967

### Northern District of California

*June Swan, et al. v. Pfizer, Inc., et al.*, C.A. No. 3:05-834

### District of Connecticut

*Kenneth Kaye, et al. v. Pfizer, Inc.*, C.A. No. 3:05-385
*Irene Bailey, et al. v. Pfizer, Inc., et al.*, C.A. No. 3:05-386

### District of Delaware

*Ronnie L. Hatcher v. Pfizer, Inc., et al.*, C.A. No. 1:05-208

### Northern District of Florida

*Marie McConnell v. Pfizer, Inc.*, C.A. No. 3:05-123

### Southern District of Florida

*Aurora Balloveras v. Pfizer, Inc.*, C.A. No. 1:05-20429

### Eastern District of Louisiana

*Gloria Ward v. Pfizer, Inc.*, C.A. No. 2:04-3469
*Elmer E. Creel, Sr., et al. v. Pfizer, Inc.*, C.A. No. 2:04-3470
*Carol J. Aiola v. Pfizer, Inc.*, C.A. No. 2:05-1207

- A2 -

*Ronald J. Babin v. Pfizer, Inc.*, C.A. No. 2:05-1208
*Deborah Ann Woodberry v. Pfizer, Inc.*, C.A. No. 2:05-1350
*Terry Bridges v. Pfizer, Inc.*, C.A. No. 2:05-1353
*George Hoffman v. Pfizer, Inc.*, C.A. No. 2:05-1354
*Helen Anne Todini v. Pfizer, Inc.*, C.A. No. 2:05-1367
*Betty A. Alexander, et al. v. Pfizer, Inc.*, C.A. No. 2:05-1720

### Middle District of Louisiana

*Ronald W. Abel, etc. v. Pfizer, Inc.*, C.A. No. 3:05-258

### Western District of Louisiana

*William Doss Turner v. Pfizer, Inc.*, C.A. No. 1:05-619
*Yvonne Clark v. Pfizer, Inc.*, C.A. No. 1:05-620

### District of Massachusetts

*Health Care for All, et al. v. Pfizer, Inc., et al.*, C.A. No. 1:05-10707

### Eastern District of Michigan

*Linda A. Watters, et al. v. Pfizer, Inc., et al.*, C.A. No. 2:05-71434

### District of Minnesota

*Loretta M. Harris v. Pfizer, Inc.*, C.A. No. 0:05-728

### Eastern District of New York

*Melissa Kelly, et al. v. Pfizer, Inc.*, C.A. No. 1:05-949

### Southern District of New York

*ASEA/AFSCME Local 52 Health Benefits Trust v. Pfizer, Inc., et al.*,
C.A. No. 1:05-3803
*Steamfitters' Industry Welfare Fund, et al. v. Pfizer, Inc., et al.*, C.A. No. 1:05-3814
*Sheet Metal Workers' International Assn. v. Pfizer, Inc., et al.*, C.A. No. 1:05-4125

### Northern District of Ohio

*Theresa Blatnik, et al. v. Pfizer, Inc.*, C.A. No. 1:05-900

- A3 -

Southern District of Texas

*Ronald L. Baker, et al. v. Pfizer, Inc.*, C.A. No. 3:05-206